IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

VERONICA DRENNEN, et al.,

          Plaintiffs,

v.                                  CIVIL ACTION NO. 5:06-cv-00390

UNITED STATES OF AMERICA,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Motion for Summary Judgment [Docket 44] filed by Defendant, the United States of America (the Government). For the reasons stated below, the Government's motion is **DENIED**.

*I. FACTUAL BACKGROUND*

On October 21, 2003, Plaintiff Veronica Drennen (Mrs. Drennen) underwent an anterior colporrhaphy, or anterior repair,[1] performed by Dr. Roy Wolfe, Jr. Two days after the surgery, Mrs. Drennen began experiencing severe and unusual abdominal pain. Due to her discomfort, she called Dr. Wolfe's office. Dr. Wolfe was away from his office that day, but the nurse informed Mrs. Drennen that she would pass the message along to Dr. Wolfe. By the fifth day, however, the pain

---

[1] An anterior colporrhaphy is a surgical procedure designed to correct a cystocele, which is a medical condition that occurs when the fascia between the bladder and vagina is weak, allowing the bladder to bulge through the top of the vagina. The procedure returns the bladder to its correct anatomical position. When performing this type of repair, the surgeon uses a vaginal approach as opposed to an abdominal approach. An incision is made into the anterior (top) of the vaginal wall to access the weakened or separated fascia, the fascia is imprecated together from the sides and then sutured together to provide support to the bladder so that it no longer bulges into the vagina.

had worsened, and Mrs. Drennen called again. This time, she was transferred to an associate of Dr. Wolfe, Dr. Thickler, who prescribed Tylenol 3 and Motrin. The medication still did not alleviate her pain, so Mrs. Drennen called back again on November 4, 2003. That day, Dr. Wolfe was in his office, and referred her to another office for an ultrasound. The ultrasound revealed blockage in Mrs. Drennen's left ureter, and she was transferred to West Virginia University Hospital (WVUH), in Morgantown, West Virginia, on November 6, 2003, for further treatment.

In Morgantown, Dr. Stanley Zaslau of WVUH inserted a nephrostomy tube[2] into Mrs. Drennen's left kidney and equipped her with a drainage bag. Mrs. Drennen wore the bag until January 20, 2004, when Dr. Zaslau performed a re-implantation surgery to sever the left ureter above the blockage and reattach it at another location near the top of the bladder.

## II. PROCEDURAL HISTORY

On May 22, 2006, Mrs. Drennen and her husband, Bobby Drennen, filed a two-count complaint alleging negligence under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671-80,[3] and loss of consortium. In her complaint, Mrs. Drennen alleges that Dr. Wolfe breached the applicable standard of care by 1) causing the blockage in Mrs. Drennen's left ureter; and 2) failing to check for blockage during the operation. (Docket 1 at 3.) Plaintiffs rely primarily on the opinions

---

[2] A nephrostomy tube, or drainage tube, allows the kidney to drain off urine that is backed up due to blockage in the ureter. The tube is connected to a drainage bag, which holds the excess urine until the patient can dispose of it properly.

[3] At all relevant times, Dr. Wolfe was employed by Community Health Systems, Inc. (CHSI), a federally-funded health care provider located in Beckley, West Virginia. Employees of CHSI are deemed to be employees of the United States under the provisions of the FTCA. Pursuant to the FTCA, Plaintiffs filed an administrative claim with the United States Department of Health and Human Services (DHHS) in July 2005. After the claim was denied on December 6, 2005, Plaintiffs filed the instant lawsuit, pursuant to 28 U.S.C. § 2401(b).

of Dr. Zaslau to support these two theories. After discovery closed on April 30, 2007, Defendant filed the instant Motion for Summary Judgment [Docket 44] on June 14, 2007, arguing that it is entitled to summary judgment because the experts in the case agree that there is no national standard of care that requires the use of a routine cystoscopy, and because Plaintiffs have presented no evidence that Dr. Wolfe proximately caused the obstruction in the ureter. Plaintiffs filed their Brief in Opposition [Docket 51] on July 21, 2007, and Defendant filed its Reply [Docket 61] on July 26, 2007.[4]

## III. APPLICABLE LAW

*A.     Summary Judgment Standard*

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to

---

[4]     Plaintiffs also filed a Supplemental Response to Defendant's Reply [Docket 75] on September 4, 2007, without leave of court and in violation of Local R. Civ. P. 7.1(c). The parties addressed the filing of the supplemental response at a pre-trial conference held on September 5, 2007. At that conference, Defendant did not object to the filing of the supplemental response, rather, Defendant's counsel informed the Court that he would file a responsive brief the following day. Instead of filing a responsive brief, however, Defendant filed a Motion to Strike Plaintiffs' Supplemental Response [Docket 84], to which Plaintiffs responded on September 9, 2007 [Docket 86], and Defendant replied on September 11, 2007 [Docket 94].

The Court is satisfied, based upon the circumstances of the development of this case, including the relatively recent deposition of the Government's expert, Dr. Karen Ashby, that the Plaintiffs' supplemental response is justified and the Defendant's Motion to Strike [Docket 84] is **DENIED**.

withstand summary judgment; the judge must ask "whether reasonable jurors could find by a preponderance of the evidence" for that party. *Id.* at 252. When construing such factual issues, it is well established that the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

### B. Federal Tort Claims Act

Because this is a medical negligence action under the FTCA, the Court will apply state law, in this case West Virginia's Medical Professional Liability Act (MPLA), W. Va. Code § 55-7B-1 to -12. *See, e.g.*, *Bellomy v. United States*, 888 F. Supp. 760, 763-64 (S.D. W. Va. 1995); *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991). The MPLA requires a plaintiff to prove:

> (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
>
> (2) Such failure was a proximate cause of the injury or death.

W. Va. Code § 55-7-3(a)(1)-(2). Moreover, the "locality rule" has long been abolished in West Virginia, meaning that the standard of medical care is a national standard. *Plaintiff v. City of Parkersburg*, 345 S.E.2d 564, 565 (W. Va. 1986).

### IV. ANALYSIS

Plaintiffs rely upon the deposition testimony and affidavits of Dr. Stanley Zaslau -- a urologist specializing in female urology, who performed the re-implantation surgery on Mrs. Drennen in January of 2004 -- to establish that Dr. Wolfe deviated from the standard of care by causing blockage in Mrs. Drennen's left ureter and by failing to check for blockage of the ureter intraoperatively. Dr. Zaslau has rendered these opinions in one form or another throughout the lawsuit. (*See* Zaslau Aff. and Certificate of Merit ¶ 9.) (" Dr. Wolfe's breach of the standard of

care [by failing to perform a routine cystoscopy on Mrs. Drennen] and his breach of the standard of care by causing the obstruction of the left ureter[] directly caused Mrs. Drennen needless pain and suffering . . . .")

Dr. Zaslau's opinion that Dr. Wolfe caused the blockage of the ureter by negligently placing a stitch has been consistent throughout his testimony. For example, in the first part of his deposition, he opines, "So in that situation, knowing that [Mrs. Drennen] was fine before the procedure and then thereafter developed these problems, that tells us pretty presumptively that [a stitch] was the cause of her obstruction and there was no need to search for a stitch." (Zaslau Dep. vol 1, 44:7-12, Feb. 2, 2007.) In the second part of his deposition, Dr. Zaslau clarifies his opinion: "[T]his stitch in such a way deviated the ureter laterally and then another portion of it medially, per Dr. Lirio's report. So it was that stitch that was the culprit in this case. So that stitch is a negligent stitch . . . ." (Zaslau Dep. vol 2, 130:18-23, July 6, 2007.) (*See also* Zaslau Dep. vol. 2, 84-85; 88-95; 104-07; 121-22.) Based on this testimony, Plaintiffs have produced more than a mere scintilla of evidence to create a genuine issue of material fact regarding their theory that Dr. Wolfe caused the obstruction of the ureter with a negligently placed stitch.

Although Dr. Zaslau's opinions have not always been entirely clear, he has consistently opined that Dr. Wolfe's failure to check for blockage was a deviation from the standard of care. In the first part of his deposition, Dr. Zaslau observed that "[t]he important issue, though, the key issue in this patient is: If [sic] we could have identified that there was a ureteral injury at the time of the initial surgery, it could have been fixed and dealt with at that setting." (Zaslau dep. vol. 1, 21:5-9.) In the second part of his deposition, Dr. Zaslau reaffirms his opinion:

> A. [Dr. Wolfe's] inability to identify the ureteral injury is where he deviated from the standard of care. . . . While a surgical

5

|   |   |   |
|---|---|---|
|   |   | procedure was performed correctly, the lack of anticipation of a known complication is where the deviation is. |
|   | Q. | And not discovering the complication and fixing it intraoperatively? |
|   | A. | That's correct. Let's go with not discovering the complication. The critical part here is if this was discovered, it could have been fixed. |

(Zaslau Dep. vol. 2, 102:21-103:9.) (*See also* Zaslau Dep. vol. 2, 120-21; 132.)

At his deposition taken February 2, 2007, Dr. Zaslau opined that there are at least two ways to discover blockage in a ureter after an anterior repair: a cystoscopy and a dye test. (*See* Zaslau Dep. vol. 1, 14-19.) Dr. Zaslau's testimony is corroborated by Defendant's own expert witness, Dr. Karen Ashby, who teaches reproductive biology at MacDonald Women's Hospital in Cleveland, Ohio. At her deposition, taken August 16, 2007, Dr. Ashby testified in agreement with Dr. Zaslau that performing both a cystoscopy and a dye test are possible methods of investigating whether a surgeon has implicated a ureter during an anterior repair. (Ashby Dep. 16:6-11, Aug. 16, 2007.)

While Defendant in its brief correctly points to Dr. Zaslau's admission that there exists no national standard of care requiring a cystoscopy, (Docket 45 at 7; Zaslau Dep. vol. 1, 24-29), the testimony proffered both by Dr. Zaslau and by Dr. Ashby regarding the existence of alternative methods of investigation creates a genuine issue of material fact sufficient to defeat summary judgment on this issue, namely, whether an investigation as to any blocked ureters should have been done.[5]

Dr. Zaslau's testimony may not be the best, clearest example of a medical opinion that one might find, and the court will carefully scrutinize his testimony at trial, where the standard is

---

[5]   Dr. Zaslau's opinion that cystoscopy is part of the standard of care for anterior repair surgery is undermined by his admission that this is *his* standard, and not a national standard. Accordingly, this particular opinion will not be allowed at trial.

different. However, the sworn testimony of Dr. Zaslau and Dr. Ashby is, in this case, enough to permit a reasonable trier of fact to find for Plaintiffs on either of their theories.

## V. CONCLUSION

Defendant has failed to demonstrate the absence of a genuine issue of material fact that would entitle it to a judgment as a matter of law. Accordingly, the United States' Motion for Summary Judgment [Docket 44] is **DENIED**. Similarly, the Court **DENIES** the United States' Motion to Strike Plaintiffs' Supplemental Response [Docket 84].

ENTER: September 14, 2007

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE